UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VEHICLE SERVICE GROUP, LLC, ) <br> d/b/a ROTARY LIFT ) <br> ) <br>     Plaintiff/Counterclaim Defendant, ) <br> vs. ) <br> ) <br> AUTO EQUIPMENT CO. INC., ) <br> ) <br>     Defendant, Counterclaimant. ) | NO. 1:10-cv-00986-TWP-DKL |

### ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND RULE 54(b) FINAL JUDGMENT

Plaintiff Vehicle Service Group, LLC d/b/a Rotary Lift ("Rotary Lift") has moved for summary judgment in this contract dispute with Defendant Auto Equipment Co., Inc. ("AEC"). Throughout 2010, AEC purchased hydraulic lifting equipment from Rotary Lift which AEC failed to pay for in full. Rotary Lift now brings the present action to recover the $634,559.07 that AEC owes. For the reasons set forth below, Rotary Lift's Motion for Summary Judgment (Dkt. 35) is **GRANTED**. The enforcement of a final judgment will be **STAYED** under Fed. R. Civ. P. 62(h) pending resolution of AEC's counterclaim, provided that AEC posts a bond in the full amount of the judgment, plus applicable interest, within 30 days of the date of this entry.

*Background*

Rotary Lift manufactures and sells hydraulic lifts and other heavy equipment to distributors; in turn, the distributors re-sell the products to end users. AEC was a distributor engaged in the business of purchasing and reselling Rotary Lift's products. These two entities have a long-standing business relationship. From September 1999 until 2009, AEC was the

1

exclusive distributor of Rotary Lift's lift equipment in the Southeastern part of the United States. In that capacity, AEC paid Rotary Lift over $13 million.

In 2009, the parties' relationship apparently began to sour.[1] That year, Rotary Lift added distributors to compete against AEC; it also began selling directly to AEC's customers. Faced with increased competition in the midst of an economic downturn, AEC was forced to lower its bids, which resulted in a difficult financial year. During the second quarter of 2010, AEC had significant sales, but it was forced to use proceeds to pay down the debt it incurred in 2009. Unfortunately, due to a cash shortfall, AEC was unable to pay Rotary Lift for its 2010 purchases. AEC tried to negotiate with Rotary Lift, but these efforts were futile. Rotary Lift suspended its business with AEC sometime in 2010.

The fraying of the parties' business relationship set the stage for the present lawsuit, which is based on AEC's failure to fulfill its contractual obligations to Rotary Lift. Specifically, on at least 33 occasions,[2] from January 15, 2010, until June 4, 2010, AEC placed purchase orders for Rotary Lift's equipment and failed to pay for the equipment in full. Rotary Lift invoiced AEC for the orders, manufactured the equipment, and delivered it. These purchases were facilitated by an ongoing line of credit that Rotary Lift extended to AEC. Under this line of credit, AEC was not required to pay orders in full before placing another order. The purchase prices of the equipment varied greatly, ranging from $32.63 to $325,507.69. In total, AEC owes Rotary Lift $634,559.07.

---

[1] The Court would be remiss not to mention that AEC appears to have inadvertently omitted a page from John Burt's affidavit. (Dkt. 45-1 at 2-3). Given the Court's ruling, however, the effect of this omission is negligible.

[2] Rotary Lift emphasizes that 34 transactions are at issue, but the Court only counted 33. Again, this issue doesn't meaningfully affect the Court's decision.

2

On August 3, 2010, Rotary Lift sued AEC to recover this amount. In response, on September 24, 2010, AEC filed a counterclaim, alleging that: (1) Rotary Lift failed to pay certain commissions owed to AEC in violation of a 2009 Annual Heavy Duty Distributor agreement between the parties ("Distributor Agreement"); (2) Rotary Lift made direct sales to customers in AEC's trade area in violation of the Distributor Agreement; (3) Rotary Lift inappropriately added surcharges to certain orders in violation of the Distributor Agreement; (4) Rotary Lift cancelled a discount to AEC in violation of the Distributor Agreement; and (5) Rotary Lift charged a cancellation fee to AEC in violation of the Distributor Agreement. Additional facts are added below as needed.

### *Legal Standard*

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "Construction of a written contract is a question of law for which summary judgment is particularly appropriate." *Slutsky-Peltz Plumbing & Heating Co., Inc. v. Vincennes Cmty. School Corp.*, 556 N.E.2d 344, 345 (Ind. Ct. App. 1990) (citation omitted).

*Discussion*

A. **Is summary judgment warranted?**

Indiana's Uniform Commercial Code applies to this case since it involves the sale of goods. *See* Ind. Code § 26-1-2-102. "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale…". Ind. Code § 26-1-2-105(1). Under the Uniform Commercial Code, if the buyer accepts goods, he must pay the contract rate. Ind. Code § 26-1-2-607(1). Moreover, "[o]nce the buyer accepts goods, the buyer is precluded from rejecting them," and "the buyer must pay the contract price for any goods accepted." *McClure Oil Corp. v. Murray Equip., Inc.,* 515 N.E.2d 546, 552 (Ind. Ct. App 1987) (citations omitted). Finally, "[i]f the buyer does not pay the contract price as it becomes due, the seller may sue for the price of the goods accepted." *Id.* (citation omitted).

There is no need to belabor the point: AEC ordered goods; Rotary Lift manufactured and delivered them; AEC accepted the goods and resold them; and AEC failed to pay for them in full. Consequently, AEC must pay Rotary Lift what it owes. Rotary Lift is entitled to judgment as a matter of law in the amount of $634,559.07.

B. **Is prejudgment interest appropriate?**

Rotary Lift has also requested prejudgment interest. A fundamental precept of finance is that a dollar today is worth more than a dollar tomorrow. After all, you can invest that dollar today, and, assuming a positive rate of return, you'll have more tomorrow than you did today. Indiana law, which applies here, recognizes the appropriateness of compensating injured parties for their "lost use of money," especially when this figure is easy to compute. *See Town of New Ross v. Ferretti*, 815 N.E.2d 162, 169 (Ind. Ct. App. 2004) ("An award of pre-judgment interest in a breach of contract action is warranted if the amount of the claim rests upon a simple

calculation and the terms of the contract make such a claim ascertainable.") (citation and internal quotations omitted).  Specifically, "[t]he test for determining whether an award of pre-judgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time." *Id*. at 169-70.

AEC contends that prejudgment interest is inappropriate because "[t]he trier of fact will need to hear evidence on AEC's counterclaim before it can determine how much money AEC actually owes Rotary Lift." (Dkt. 44 at 9-10); *see also Town of New Ross*, 815 N.E.2d at 170 (awards of pre-judgment interest are appropriate when the trier of fact does not have to exercise its judgment to assess the amount of damages).  In other words, AEC argues that the damages it is awarded through its counterclaim must operate as a "set-off" against what it owes Rotary Lift, thus making any prejudgment interest determination inappropriate (or, at the very least, premature).

The Court is not persuaded.  AEC's counterclaim did not arise out of the <u>same contract</u> as Rotary Lift's present claim, which would be required for a set-off under Indiana law.  Ind. Code § 26-1-2-717 ("The buyer on notifying the seller of his intention so to do may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the <u>same contract</u>.") (emphasis added).  As explained in more detail below, Rotary Lift's claim involves purchase orders from 2010, whereas AEC's counterclaim involves a Distributor Agreement that expired at the end of 2009.  The claims are distinct, separable, and arise under different contracts.

Seventh Circuit authority reinforces this position.  While the Indiana case law interpreting Ind. Code § 26-1-2-717 is limited, Seventh Circuit cases applying Illinois law – which has a virtually identical UCC provision (§ 2-717) – are instructive.  For instance, in

5

*ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702 (7th Cir. 1995), the Seventh Circuit applied § 2-717 and ruled that "distributorship agreements and the <u>purchase orders that arise under them are different contracts</u>," meaning "the price of the goods a buyer accepts pursuant to a purchase order <u>is not susceptible to set-off</u> against damages the buyer sustains as a result of a seller's alleged breach of a related distributorship agreement." *Id*. at 705 (emphasis added; citing *Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064 (7th Cir. 1987)).  That reasoning applies with equal force here; no set-off is permitted.

With this in mind, the Court observes that the amount of prejudgment interest that AEC owes is easily calculable.  All 33 purchase contracts at issue had an invoice specifying a due date and the exact amount owed.  AEC has failed to pay any portion of the invoices, with two exceptions – a partial payment of $15,000.00 on one order and a credit of $2,105.00 on another order.  The unpaid balance of $634,559.07 has been adjusted to account for both the partial payment and the credit.  In sum, it doesn't take a forensic accountant to calculate prejudgment interest in this case, and Rotary Lift is entitled to prejudgment interest at the statutory rate (8%).  *See* Ind. Code § 24-4.6-1-103(b).  Therefore, prejudgment interest should be awarded in the amount of $71,965.97 (through October 26, 2011, with interest accruing at a rate of $139.41 per day).

### C. Is Rule 54(b) Final Judgment warranted?

There is a final wrinkle to this analysis.  Namely, it is questionable whether a Rule 54(b) final judgment in Rotary Lift's favor is appropriate in light of AEC's counterclaim.  As mentioned, AEC has filed a counterclaim against Rotary Lift based on various alleged violations of the parties' Distributor Agreement.  AEC argues that final judgment is inappropriate because

its counterclaim is inextricably tied to Rotary Lift's present claim. Rotary Lift, of course, disagrees, claiming that the two claims are separable and distinct.

 Rule 54(b) governs this analysis, providing:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, cross-claim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Where, as here, there is more than one claim for relief, finality determinations require two findings: (1) the judgment would fully adjudicate a party's claim; and (2) there is no just reason for delay of entry of final judgment. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980).

 Rotary Lift satisfies step one, as a judgment in its favor completely adjudicates its claim. Step two – determining whether there is "no just reason for delay" – is more difficult, requiring district courts to analyze two factors: first, the interests of sound judicial administration, and, second, the equities. *Curtiss-Wright*, 446 U.S. at 8.

 With respect to judicial administration, the primary concern is avoiding piecemeal appeals. *Id.* Accordingly, courts must consider whether the claims under review are separable from the remaining claims to be adjudicated, and "whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* The Seventh Circuit has stated that "while claims with some factual overlap may still be separate for the purposes of Rule 54(b), claims are not

separable for Rule 54(b) purposes if the facts they depend on are largely the same, or stated otherwise, if the only factual differences are minor." *ODC Commc'ns Corp. v. Wenruth Invs.*, 826 F.2d 509, 512. (7th Cir. 1987) (citation and internal quotations omitted). On this issue, it is also important to note that even if AEC's counterclaim is "compulsory" in nature (as defined by Fed. R. Civ. P. 13(a)),[3] this does not necessarily affect finality determinations for purposes of Rule 54(b). *See Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445, 452 (1956) ("If the District Court certifies a final order on a claim which arises out of the same transaction and occurrence as pending claims, and the Court of Appeals is satisfied that there has been no abuse of discretion, the order is appealable."); *Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1367 (7th Cir. 1990) (Rule 54(b) judgments can be entered even when a compulsory Rule 13(a) counterclaim remains pending).

Overall, this factor requires a factual comparison between Rotary Lift's claim and AEC's counterclaim. In short, the Court finds that, as a practical matter, these two claims have little in common. Rotary Lift's claim is predicated on AEC's failure to pay $634,559.07 for goods bought in 2010 through 33 specific sales transactions, which are evidenced by purchase orders originating from AEC and invoices originating from Rotary Lift. AEC's counterclaim, by contrast, stems from a Distributor Agreement that expired on December 31, 2009, which generally recognized that Rotary Lift would sell products to AEC and established AEC's trade

---

[3] Rule 13(a)(1) provides that "[a] pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." As the Seventh Circuit has noted, "[a] compulsory counterclaim is by definition a counterclaim that must be filed to preserve the defendant's rights." *Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1367 (7th Cir. 1990).

area. Importantly, however, the Distributor Agreement did not establish prices or other specific sales terms. *See Schieffelin*, 823 F.2d at 1067 (highlighting that purchase orders – not the distributorship agreement – designated the price, type, and quantity of the goods for any particular sale).

Ultimately, Rotary Lift's claim and AEC's counterclaim are not inextricably tied. To the contrary, they involve different time periods, different facts, and different contracts. Even if both Rotary Lift's claim and AEC's counterclaim are appealed separately, the Seventh Circuit will not have to tackle duplicative issues. *See Schieffelin & Co.*, 823 F.2d 1064 (affirming district court's entry of final judgment in favor of plaintiff on claim involving purchase orders, even though counterclaim involving a distributorship agreement between the parties remained); *see also Shintom America, Inc. v. Car Telephones, Inc.*, 45 F.3d 1107, 1110 (7th Cir. 1995) (affirming final judgment on manufacturer's express contract claim in action to recover price of goods sold, notwithstanding defendants' counterclaim for breach of distributorship agreement); *ECHO, Inc.*, 52 F.3d at 708 (affirming final judgment under similar circumstances).

As for the "equities" at play, it appears that AEC is effectively funding current operations in part through money it owes Rotary Lift. Moreover, one of AEC's principals has begun working for one of Rotary Lift's direct competitors. As Rotary Lift notes, "AEC should not be permitted to take delivery of over $600,000 worth of goods, withhold payment, resell the goods, make a re-sale profit, and then compete head to head with Rotary Lift by going to work for one of its competitors while maintaining its refusal to pay Rotary Lift." (Dkt. 37 at 21-22). The Court is persuaded.

Given the equities and the relatively attenuated connection between Rotary Lift's claim and AEC's counterclaim, the Court believes that there is no just reason to delay entry of final

judgment in favor of Rotary Lift. But this does not necessarily end the analysis. The question then becomes whether the *enforcement* of that judgment should be stayed pending resolution of AEC's counterclaim. The Seventh Circuit has specifically recognized that this can be an appropriate course of action. *See Schieffelin & Co.*, 823 F.2d at 1065 ("We note that enforcement might have been stayed upon appropriate conditions under Rule 62(h).").

Here, the Court finds that the most prudent decision is to stay enforcement of the final judgment under Rule 62(h), conditioned upon AEC posting a sufficient bond. Rule 62(h) addresses this course of action, providing:

> A court may stay enforcement of the final judgment entered under Rule 54(b) until it enters a later judgment or judgments, and may prescribe terms necessary to secure the benefit of the stayed judgment with the party whose favor it was entered.

Fed. R. Civ. P. 62(h). Specifically, Rule 62(h) allows courts to prescribe terms – such as a bond or requiring the losing party to deposit the amount of the judgment with the court – to secure the benefit of the judgment in the event a Rule 62(h) stay is awarded. *See Curtiss-Wright Corp.*, 446 U.S. at 13 n.3. Moreover, district courts within the Seventh Circuit have previously required bonds in the event of a stay to secure payment of the judgment. *See Wine Imports of America, Ltd. v. Gerolmo's Liquors, Ltd.*, 563 F. Supp. 163, 168 (E.D. Wis. 1983) (granting stay under Rule 62(h) and requiring party to post bond of $35,000 to secure payment of $33,750.07 judgment); *see also* Wright & Miller, *Federal Practice and Procedure* § 2909. Here, the Court grants a stay under Rule 62(h) until AEC's counterclaim is resolved, but this stay is conditioned upon AEC posting a bond by a good and sufficient surety for the full amount of the judgment, including all applicable interest.

*Conclusion*

For the reasons set forth above, Rotary Lift's Motion for Summary Judgment (Dkt. 35) is **GRANTED**. The enforcement of a Rule 54(b) final judgment will be **STAYED** under Rule 62(h) pending resolution of AEC's counterclaim, provided that AEC posts a bond in the full amount of the judgment, plus all applicable interest, within 30 days of the date of this entry.

SO ORDERED:   10/26/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution to:

James F. Cann
KOLEY JESSEN P.C.L.L.O.
james.cann@koleyjessen.com

Shannon D. Landreth
BINGHAM MCHALE LLP
slandreth@binghammchale.com

Stacy K. Newton
RUDOLPH FINE PORTER & JOHNSON
skn@rfpj.com

11